592 So.2d 952 (1991)
STATE HIGHWAY COMMISSION OF MISSISSIPPI
v.
Henrietta HYMAN, as Executrix of the Estate of Herbert A. Hyman, Deceased; Owner, Hyman Corporation, Party in Interest; Holmes County Bank and Trust Company, Beneficiary; J.R. Gilfoy, Trustee.
No. 07-CC-59272.
Supreme Court of Mississippi.
December 18, 1991.
*953 Buren T. Batson, Jr., Lexington, for appellant.
Don Barrett, Barrett Law Office, Lexington, for appellee.
En banc.
PITTMAN, Justice, for the Court:
This is an appeal from the Circuit Court of Holmes County, involving an eminent domain proceeding wherein the trial court granted a default judgment in favor of the landowner, Herbert Hyman,[1] because the Mississippi State Highway Commission (hereinafter "the Commission") failed to file a statement of values as required by Miss. Code Ann. § 11-27-7 (1972). The proceedings continued on a writ of inquiry to determine the amount of damages owed to Hyman. The jury returned a verdict in the amount of sixty-five thousand dollars ($65,000). Subsequently, the court denied the Commission's motion for a new trial. The Commission appeals, claiming the court erred in: (1) granting a default judgment against the Commission for failure to file a statement of values; (2) not granting the Commission's motion for a new trial; and (3) allowing the witness for the landowner to establish fair market value by using comparable sales in which the condemnor was the purchaser. Finding that the jury verdict is not supported by the evidence, we reverse and remand for a new hearing to determine the appropriate value of the land in question and damages due to Hyman.

I.
This case involves a 1.51 acre tract of land located in Holmes County Mississippi. The Commission wanted the land to construct a highway. After negotiating with Hyman and failing to reach a mutually agreeable price, the Commission took the land pursuant to Miss. Code Ann. §§ 11-27-81 to 91 (Supp. 1990), popularly known as the "quick take" law. As required, the court appointed a disinterested appraiser to determine, among other things, the fair market value of the land. Miss. Code Ann. § 11-27-83 (Supp. 1990). The appraiser valued the land at $4,580.00. Later, the court issued an order granting the Commission title to the property and the right to immediate entry, as required by the statute.[2] None of these procedures, however, infringe on the right to a jury trial at a later time to determine the damages due to the landowner. See Miss. Code Ann. § 11-27-89 (Supp. 1990). That jury trial commenced several months later.
After the jury had been selected and seated, Hyman made a motion for a default judgment because the State failed to file a statement of values as required by Miss. Code Ann. § 11-27-7 (1972). The Commission admitted that no statement of values was filed in the case. They asked, however, that they be allowed to file one immediately, *954 arguing that to do so would not prejudice the landowner. According to the Commission, its standard practice is to make an offer to the landowner prior to any litigation; hence, there was no real harm in not telling the landowner what he certainly already knew. Further, the Commission noted that the one person who was going to testify for them as to value was in the courtroom and could be questioned by Hyman before he took the stand. Finally, they argued that they had a statement of values with them and had inadvertently failed to file it.
The court granted Hyman's motion for a default judgment and thereafter proceeded with a writ of inquiry to determine the amount of damages owed to Hyman.[3] At this stage, Hyman presented evidence as to the value of the land.[4] Most of the testimony dealt with the sales of comparable property to the condemnor.
The jury entered a verdict in the amount of $65,000.[5] In contrast, the independent appraiser's report calculated the total damages due to be $4,530.00. Not surprisingly, the Commission moved for a new trial. The basis for this motion was that new evidence had been discovered. The new evidence was the statement of values that had never been filed. To support the motion, the Commission called a secretary to testify about filing the papers. She remembered bringing the statement of values to the clerk's office and calling the clerk's office the following week to tell them that she hadn't received certified copies of the statement of values. She testified that the clerk advised her that they had been busy but they would get to it as soon as possible. She never received them.
The Commission's own files incorrectly show that the papers had been filed. The Commission maintains that they made a good faith effort to file the statement of values but admits that the papers are not in the record. They maintain that the most logical explanation for the papers not being properly filed is that someone accidentally picked them up in the clerk's office and carried them away.
The clerk of the court filed an affidavit stating that he was in the office the day the secretary came. He stated that he personally inspected all the documents she brought with her that day. According to the clerk, there was no statement of values among the papers. After hearing this testimony, the lower court denied the motion for a new trial. The Commission perfected this appeal.

II.
The Commission argues that the lower court erred by granting a default judgment. They admit that the statement of values was not filed. They argue however that there would have been no prejudice to Hyman because he knew what the Commission had offered for his property during negotiations and because he most certainly knew about the money that the state had deposited into court. Conversely, Hyman argues that the statement of values is statutorily required and that it is part of the pleadings. As such, he argues, it is analogous to failing to file an answer *955 and therefore a default judgment was proper.
Miss. Code Ann. § 11-27-7 (1972) is the statute that governs the pleadings in this case. Section 11-27-7 provides the specific requirements of the statement of values and other special pleadings required in eminent domain cases. In part, it provides that: "[t]he judge, for good cause shown, may increase or decrease the time for pleading by the petitioner or by the defendant."
In Mississippi State Highway Comm'n. v. Amos, 319 So.2d 231 (Miss. 1975), the trial court allowed the landowner to file an amended statement of values on the day of trial. On appeal the Commission argued that it was an abuse of discretion to allow this amendment because the statute required that the statement be filed not less than ten days before the hearing. This Court affirmed the trial court's actions noting that the last part of the statute provides for such discretion. The Court also noted that the Commission was not prejudiced by this action. Id. at 233. Following Amos, the trial court in the case at hand could have also allowed in its discretion an amended statement of values because Hyman was not prejudiced by the omission.
Hyman argues that this case is controlled by Coleman v. Mississippi State Highway Comm'n., 289 So.2d 918 (Miss. 1974). There, this Court found that it was not an abuse of discretion for the lower court to enter a default judgment against a landowner who failed to file a statement of values. The Commission moved for a default judgment the day before the trial when no statement of values was in the record. On the day of trial, instead of filing the required statement of values the landowner asked for a continuance. The court denied it and entered a default judgment. Id. at 920. In affirming, this Court stated that, "[t]he present determination that good cause did not exist for an enlargement of time to plead does not indicate an abuse of judicial discretion since it appears that the respondent had notice and ample time to meet the statutory requirements, but did not plead or give any reason for not doing so." (emphasis added) Id. The case at bar is unlike Coleman. In Coleman, the defaulted party knew that he had failed to file the statement and still came to court unprepared and with no explanation for lack of preparation. This Court specifically mentioned these facts in affirming the default judgment. Id. These facts are not present in the case presently before us.
Generally, default judgments are not appropriate where a party's failure to plead or otherwise defend is merely technical, or where the default is merely de minimis. A default judgment is appropriate where there is reason to believe that a party has exhibited bad faith. Factors which may influence the exercise of the court's discretion include the possibility of prejudice, merit of the claims, sufficiency of the complaint, the sum of money at stake in the action, and whether default was due to excusable neglect. See 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 55.05 (2d ed. 1985).
The lower court should not have entered a default judgment. The only issue sub judice was the amount of damages that Hyman would receive from the Commission. Both parties came to trial ready to proceed, except for the fact that the Commission failed to file the statement of values, a technical error. There is no indication in the record that there was anything else omitted from the pleadings. Hyman would not have been prejudiced by an extension of time for the Commission to file the statement. Hyman knew to what extent the State valued the land because the parties had been involved in unsuccessful negotiations concerning the value of the land. If he did not want to delay the trial until another date, the trial judge could have allowed Hyman time to review the statement of values so that Hyman could adequately cross examine the Commission's witness who was in the courtroom that day.
Furthermore, this Court has some doubt as to whether a default judgment entered against the State is even valid. Miss. Code Ann. § 11-45-3 provides that in the conduct of a case by or against the State, "The *956 suit shall be proceeded with as if it were between private persons; but a bill shall not be taken as confessed nor a judgment by default be rendered against the state." Miss. Code Ann. § 7-5-41 is also applicable. Section 7-5-41 explains that in all suits against the State of Mississippi, "No decree pro-confesso or default judgment shall be taken against such defendant." It appears from the plain meaning of these statutes that our legislature does not provide for a default judgment against the State in any claim including a suit such as the one presently at bar.
Because a default judgment should only be entered where one party has demonstrated elements such as bad faith or neglect without reasonable excuse and because a default judgment against the State is suspect, the trial court did abuse its discretion in granting a default judgment against the Commission. The lower court did not use the correct legal standard or consider the correct factors to enter the default judgment. It was thus an abuse of discretion reversible by this Court. See Detroit Marine Engineering v. McRee, 510 So.2d 462, 467 (Miss. 1987).

III.
Next, the Commission argues that the trial court erred when it failed to grant their motion for a new trial on the grounds of newly discovered evidence. This motion can be considered not only a motion for a new trial under Miss.R.Civ.P. 59 but also a motion for relief from judgment under Miss.R.Civ.P. 60(b).[6]Mayoza v. Mayoza, 526 So.2d 547, 548-49 (Miss. 1988). To determine if a trial court has correctly denied a Rule 60(b) motion for relief from a judgment entered by default this Court has noted certain factors that must be considered, weighed and balanced. Among those are whether "there was a bona fide excuse for failure to answer timely, whether the party in default had a colorable defense on the merits, and whether prejudice would result to the non-offending party if the judgment be set aside." Id. at 549. Turning to the facts of this controversy, it is obvious that the Commission thought that all of the pleadings were in order or they would not have come to court and selected a jury. All of the pleadings were filed in accordance with the statute. They had their own copy of the statement with them that day and their records showed, incorrectly, that it had been filed. The Commission had a bona fide excuse.
The Commission also had a colorable defense. The issue was the amount of damages. The judge had in the record the report from a disinterested third party appraiser that calculated the damages at $4,530.00. Hyman's statement of values calculated the damages at $78,247.00, almost twenty times the amount contained in the independent report. Obviously, there was a significant dispute regarding the only issue left in the case.
Any prejudice to Hyman by setting aside the default judgment would have been minimal at best. The total time of the proceeding was only about fifteen minutes. If the Commission had been allowed to file the statement, the proceeding still could have been concluded in the same day even if Hyman had been given time to review the statement for cross examination preparation.
The trial judge abused his discretion by not relieving the Commission of the default judgment.

IV.
The Commission also assigns as error the trial court's admission of evidence of sales of comparable property to the Commission. For support, the Commission relies on Mississippi State Highway Comm'n v. Taylor, 293 So.2d 9 (Miss. 1974). *957 In that case this Court held that sales of property made to agencies vested with the power of eminent domain generally should not be used as comparable sales for valuation purposes. Id. at 10. The reason for this is that such sales are more in the nature of compromises and ordinarily cannot be used as fair indicators of market value. Id.
This at least partially explains the great disparity between the estimated value of the land according to the independent appraiser and Teague, Hyman's expert witness: Teague used comparable sales to the Commission while the appraiser used comparable sales not involving agencies with the power of eminent domain. However, at trial, the Commission inexplicably failed to object in any way or to move to strike this inadmissible evidence. As such, the point of error is not preserved on appeal. See Miss.R.Evid. 103(a)(1); Hooker v. State, 516 So.2d 1349, 1354 (Miss. 1987). This Court will ignore this requirement for preservation on appeal when a substantial right is affected. This Court retains the power to notice plain error. Miss.R.Evid. 103(d); Comment to Miss.R.Evid. 103. The plain error doctrine reflects a policy to administer the law fairly and justly. A party is protected by the plain error rule when (1) he has failed to perfect his appeal and (2) when a substantial right is affected. The Commission's appeal is not perfected because the error was not objected to at trial. And a substantial right is affected. Over $60,000.00 of the State's money is at issue in this appeal. This is certainly a substantial right affected by the error of admitting Teague's testimony.
Admitting the testimony of Teague, Hyman's expert witness, was plain error. Teague used improper considerations in determining the value of the Hyman property. Teague gave testimony that his valuation was based on a comparable sale from landowner to the Commission. And Teague testified that one consideration used in his appraisal of the subject property was "the amount of money available" in the State's treasury. Teague candidly noted that the "money [was] there" to take care of this matter.
The award of $65,000.00 appears to be excessive for 1.5 acres of land in Holmes County. The court appointed appraiser valued the land at $4,530.00. Hyman valued the same land at $59,198.00. Hyman valued compensation due at $78,247.00 after allowances for damages to the remaining land. This is almost twenty (20) times the amount contained in the independent report. The jury award of $65,000.00 is significantly greater than the valuation by the court appointed appraiser. The great disparity in estimations highlights the suspected excessiveness of the award. Due to the excessiveness of the award, the inadmissibility of Teague's testimony, and improper considerations used by Teague in his valuation, the court should have adjusted the award. To allow the award was plain error.

V.
Finding that the default judgment against the Commission was an abuse of discretion, that the denial of a new trial was in error, and that the jury verdict was not supported by admissible evidence, we reverse the decision of the lower court and remand for a new hearing to determine the appropriate value of the land in question.
REVERSED AND REMANDED FOR PROCEEDING NOT INCONSISTENT WITH THIS OPINION.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN and BANKS, JJ., concur.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J.
McRAE, Justice, dissenting:
Today the majority sends a message to our citizenry, in which we state that this Court would not apply rules equally to litigants, particularly when it involves the State of Mississippi as party litigant. The message further states that this Court will be the keeper of the State's Treasury, regardless of incompetent counsel hired by *958 the Attorney General's Office. We ruled adversely on the same issue to a landowner, at the Attorney General's request for and on behalf of the State, in the case of Coleman v. Mississippi State Highway Commission, 289 So.2d 918 (Miss. 1974). Today, because of the Attorney General's private counsel, we rule just the opposite. The old saying of "What's sauce for the goose is sauce for the gander" does not apply when the State of Mississippi is involved.
The majority holds that the lower court abused its discretion by entering a default judgment when it was only a technical error. However, when a landowner does the same thing, we agree with the discretion of the trial court in affirming its decision to default the landowner per the Coleman Court, which stated:
While it is undoubtedly true that a trial judge has the authority to increase or decrease the time for pleading by the parties under Section 11-27-7, nevertheless the exercise of this prerogative is motivated only "for good cause shown" by its terms, thus placing the invocation of the prerogative within the discretion of the trial judge. The present determination that good cause did not exist for an enlargement of time to plead does not indicate an abuse of judicial discretion since it appears that the respondents had notice and ample time to meet the statutory requirements, but did not plead or give any reason for not doing so. Ponder v. O'Neal Electric Co.; 214 So.2d 453 (Miss. 1968), and Parker v. State, 201 Miss. 579, 29 So.2d 910 (1947). We conclude there was no error in denying appellants' motion for a continuance.
* * * * * *
The cause is therefore reversed and remanded for trial within the limitations of the present pleadings since "good cause" was not revealed to the trial court nor suggested to this Court by the appellants in explanation of their failure to file their pleadings. The pleadings relating to value are required by Section 11-27-7 and without them Chapter 27 on eminent domain becomes meaningless to a large extent. Legislative procedures for trial of eminent domain cases were not designed to be lightly set aside by the inaction of litigants.
289 So.2d at 920, 921.
The majority cites Mississippi State Highway Comm'n v. Amos, 319 So.2d 231 (Miss. 1975), as controlling, when a closer view of Amos shows that the landowner had already filed a statement of value; that during the course of the trial testimony showed that it was higher than the statement of value and, after the trial, he simply moved to amend his statement of value to include the amount of the jury verdict. Amos has no bearing on the case sub judice simply because the State failed to file a statement of value at all. In an eminent domain proceeding, if a party fails to file the statement of value in accordance with the statute, the expert witness could be kept off the stand for the party that fails to file his statement.
The comedy of errors continued with the private attorney hired by the Attorney General at the hearing for the assessment of damages. The landowner's attorney put on an expert who stated that he was using comparables of other eminent domain proceedings to arrive at the $65,000 evaluation of the land. The attorney representing the State sat quietly by, did not cross-examine or object to any of the testimony, and allowed the jury to have only before it the testimony of the landowner's expert, who stated the value to be $65,000. This issue was not even raised on the appeal, and now we, as a thirteenth juror, sit here and say "plain error" simply because it's the State. Nothing precludes lawyers from representing their clients, cross-examining other witnesses, or at least objecting to the testimony at trial.
The majority's stated reason for reversal was:
Due to the excessiveness of the award, the inadmissibility of Teague's testimony, and improper considerations used by Teague in his valuation, the court should have adjusted the award. To allow the award was plain error.
*959 The majority calls it "plain error." I call it the majority being the jury, simply protecting the State of Mississippi and pulling the blindfold over one eye of the Lady of Justice  the other is winking at the State.
I would affirm.
DAN M. LEE, P.J., joins this opinion.
NOTES
[1] Herbert Hyman died and a motion by his widow, Henrietta Hyman, as Executrix of the Estate of Herbert A. Hyman, for substitution of parties was granted by this Court March 27, 1991.
[2] To perfect this right, the statute requires that the Commission deposit into court 85% of the compensation due the landowner, as determined by the appraiser, i.e., 85% of $4,580. Miss. Code Ann. § 11-27-85 (Supp. 1990). For some reason the Commission deposited $18,075 with the clerk. This amount represents the fair market value of the whole tract of land owned by the respondent, only a portion of which the Commission sought to acquire.
[3] Technically the procedure known as a writ of inquiry no longer exists. Rule 81(e) of the Mississippi Rules of Civil Procedure provides generally that writs as forms of proceedings have been abolished. Ignoring errors of nomenclature, it is appropriate to treat the hearing as one for the assessment of damages. See Rule 55(c) Miss.R.Civ.P.; Dungan v. Dick Moore, Inc., 463 So.2d 1094, 1098 n. 2 (Miss. 1985).
[4] The following colloquy occurred between the judge and the attorney for the landowner:

BY THE COURT: All right, I am going to grant the motion of the property owner. Now what is the procedure?
BY MR. BARRETT: [attorney for the landowner] To proceed on ... that we put on a prima facie case and rest. It shouldn't take ten-fifteen minutes.
[5] The only witness who testified to the value of the land for the landowner, other than the landowner himself, was Mr. Robert Teague. He calculated the total damages due to the landowner at $65,091.50. That figure included the fair market value of the land ($46,042.50), plus the damages caused to the remaining portion of the property that the Commission did not seek to acquire (i.e., relocation of water and sewer pipes) ($14,049.00), plus the amount to compensate for the diminished access to the property ($5,000).
[6] MRCP 55(c) provides that: "For good cause shown, the court may set aside an entry of default and, if judgment by default has been entered, may likewise set it aside in accordance with rule 60(b)." The only Rule 60(b) problem here is that the reason cited by the commission was newly discovered evidence. Rule 60(b)(3) by its terms applies only to evidence which could not have been discovered in time to move for a new trial. This "evidence was clearly discovered within time to move for a new trial." However the commission's "problem" falls squarely within Rule 60(b)(2), accident or mistake.